UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RITTENBERG, | ) NO. CV 04-2939-MAN |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND ORDER |
| | ) |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

Plaintiff filed a Complaint on April 27, 2004, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for disability insurance benefits ("DIB"). 42 U.S.C. § 405(g). On May 24, 2004, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636. The parties filed a Joint Stipulation on March 25, 2005, in which: Plaintiff seeks an order reversing the Commissioner's decision denying benefits; and Defendant requests that the Commissioner's decision be affirmed or, alternatively, that the case be remanded for a new hearing. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff was granted disability benefits based on an application alleging an onset date of March 1995. (Administrative Record ("A.R.") 17.) In an August 20, 1997 Work Activity Report, Plaintiff reported to the Commissioner that he was going to attempt to return to his former work as a veterinarian for a trial period of time. (A.R. 132-35.)

In a January 23, 1998 letter, the Commissioner informed Plaintiff that the evidence regarding his disability claim had been reviewed, and that his disability was continuing. The Commissioner stated that Plaintiff's claim would be further reviewed in May 1998, because his nine month trial work period would end at that time. In addition, the Commissioner stated that "[w]hen your claim is reviewed, you will be contacted if there is any question as to whether your eligibility continues." (A.R. 136.)

In a November 4, 1999 letter, the Commissioner informed Plaintiff that his benefits had been increased. (A.R. 137.) In a November 17, 1999 letter, the Commissioner informed Plaintiff that he had not cashed a benefits check dated August 3, 1998. (A.R. 138.) On April 6, 2000, Plaintiff sent a letter to "Mr. Larry Boland" attaching a completed form regarding his earnings from his veterinarian practice from March 4, 1995, through December 31, 1999. (A.R. 62-63.) In a May 5, 2000 letter, the Commissioner informed Plaintiff that his disability benefits were being terminated, and he had to refund overpaid disability benefit payments. (A.R. 64.) In a June 9, 2000 Request for Waiver of Overpayment, Plaintiff requested a waiver of the overpayment, which the

Commissioner denied after a personal conference with Plaintiff and upon reconsideration. (A.R. 74-81, 82-84, 87-88, 89, 90-91.)

On March 21, 2002, Plaintiff, who was represented by counsel, appeared personally and testified at a hearing before Administrative Law Judge ("ALJ") Norman Sherr. (A.R. 23-49.) In an August 27, 2002 decision, the ALJ found that Plaintiff was overpaid disability benefits. (A.R. 18.) In addition, the ALJ found that Plaintiff was not "without fault" in causing or accepting the overpayment, and recovery of the overpayment therefore was not waived. (*Id.*) The Appeals Council subsequently reviewed the ALJ's decision, and affirmed it. (A.R. 3-5.)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary

of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges two disputed issues. First, Plaintiff contends that the ALJ erred in finding that the overpayment of disability benefits to Plaintiff was not waived, because Plaintiff was not "without fault" in accepting the overpayment. (Joint Stip. at 2-3.) Second, Plaintiff contends that the ALJ improperly assessed his credibility. (Joint Stip. at 8.)

**A.   The ALJ's Finding That Plaintiff Was Not "Without Fault" In Accepting The Overpayment Is Not Based On Substantial Evidence**.

When overpayment of disability benefits occurs, a claimant may not be obligated to repay such benefits if the claimant is found to be "without fault" and the repayment "would either defeat the purpose of

title II of the [Social Security Act], or be against equity and good conscience." 20 C.F.R. § 404.506. "Fault" is determined by whether an incorrect payment resulted from: "a) an incorrect statement by the [claimant] which he knew or should have known to be incorrect; b) failure to furnish information which he knew or should have known to be material; or c) . . . acceptance of a payment which he either knew or could have been expected to know was incorrect." 20 C.F.R. § 404.507. "The overpaid individual bears the burden of proving that he was without fault." McCarthy v. Apfel, 221 F.3d 1119, 1126 (9th Cir. 2000)(citing Anderson v. Sullivan, 914 F.2d 1121, 1122 (9th Cir. 1990)).

In this case, the determination of whether Plaintiff was or was not "without fault" turns on the validity of the ALJ's conclusion that Plaintiff "was informed that if his earnings from self employment went over the substantial gainful activity (SGA) amount for any month after the trial work period was completed, he would not be due benefits for that month." (A.R. 17.) Plaintiff correctly contends that the ALJ's decision fails to cite to **any** evidence of record to support that conclusion. (Joint Stip. at 4.)

In arguing that the ALJ's above conclusion is supported by substantial evidence, Defendant asserts that:

> On August 27, 1997, Plaintiff applied for his trial work period. ***In doing so***, Plaintiff received notice that he could work for up to 9 months and still received benefits (*i.e.,* during his trial work period), *but that thereafter he would not be eligible for benefits if his average earnings exceeded*

5

*$500 a month (A.R. 56).*

(Joint Stip. at 6; emphasis added.)  The document cited by Defendant, that is, Form SSA-L1013 SUP (5/90), captioned "Important New Information," does plainly state that:

> After we count your 9 trial work months, we may still pay you if your average earnings are not over:
> - $500 a month beginning in January 1990, or
> - $300 a month before January 1990.
>
> If your average earnings are more than these amounts, we call your work "substantial gainful activity."

(A.R. 56.)  However, Defendant provides absolutely no explanation of how in applying for a trial work period, Plaintiff purportedly received this form notice.[1]  Absent a finding that this "Important New Information" form was delivered to Plaintiff, there does not appear to be any basis upon which the conclusion that Plaintiff "was informed" that "he would not be due benefits" for any month in which his earnings exceeded the substantial gainful activity amount (A.R. 17) can rest.

Critically, in his portion of the Joint Stipulation, Plaintiff contends that he ***never*** received this form notice.  (Joint Stip. at 7.)

---

[1]  This notice appears in the record following Plaintiff's Work Activity Report -- Form SSA-820-F4 (2-91) (A.R. 52-55) and, thus, does not immediately follow the letter sent to Plaintiff on January 23, 1998 (Form SSA-L-L013 (4/86), to which it (A.R. 56) would appear to relate and supplement.

This notice is neither dated nor specifically addressed to Plaintiff. (A.R. 56.)  Aside from this notice, the Commissioner's January 23, 1998 and November 4 and 17, 1999 letters do not contain a clear statement informing Plaintiff that he will no longer be entitled to benefits if he earns over $500 per month following his nine-month trial work period. Indeed, the January 23, 1998 letter suggested that, following the end of Plaintiff's nine-month trial work period in May 1998, the Commissioner would contact Plaintiff to obtain any information regarding his work activity required to make a decision regarding further payment of benefits: "[w]hen your claim is reviewed, *you will be contacted if there is any question as to whether your eligibility continues*."[2]  (A.R. 136; emphasis added.)  Plaintiff was not contacted promptly following this anticipated May 1998 review.  (Joint Stip. at 5.)

Defendant contends that Plaintiff "never denied" having received the Commissioner's undated notice.  (Joint Stip. at 6.)  However, the hearing transcript reflects that Plaintiff was **never asked** whether he received this form notice.  Moreover, Plaintiff's testimony does not reveal what he understood his obligation to report his earnings to be following the nine-month trial work period, aside from simply responding to inquiries.  Plaintiff's counsel questioned Plaintiff regarding the information he received from the Commissioner after he submitted his

---

[2]  The second page of the January 23, 1998 letter requires that Plaintiff promptly report "changes," such as changes in his work, duties, medical condition, but it does not provide the specific guidelines contained in the undated form notice.  (A.R. 50-51.)

The record shows that Plaintiff provided information regarding his earnings from March 1995, to December 1999, in an April 6, 2000 letter sent in response to a form sent to him from "Mr. Larry Boland," and was notified of the overpayment shortly thereafter.  (A.R. 62-63, 64-70 -- May 5, 2000 letter regarding overpayment.)

1  Work Activity Report, as follows:

3     Q:  [When] you finished filling out this form [the August 27,
4     1997 request for a trial work period], what happened next?
5     A:  Social Security told me that they would notify me if
6     there's any problems or anything, and that I didn't need to
7     worry about any follow-through, that they would follow through
8     and tell me, you know, if there were any problems or anything
9     like that.  And just to respond to their questions or forms as
10    they submitted them to me or mailed them to me.
11    Q:  Did you receive any documentation subsequent to that?
12    A:  I got mailings.
13    Q:  Okay.  Do you remember receiving a form sometime in
14    January of '98?
15    A:  Yes.
16    Q:  And do you remember what that form said?
17    A:  It said I was still disabled, and that they would review
18    my claim and notify me if there's any problems.
19    Q:  Okay.  And they actually said - the form actually said
20    that they would contact you?  Is that correct?
21    A.  Correct.
22    Q:  All right.  Now, when was the next time they contacted
23    you?
24    A:  I think it was around November 1999.
25    Q:  Okay.  Almost two years later?
26    A:  Correct.
27    Q:  Do you remember what that form said?
28    A:  It said that I was still disabled, and that they were

1    increasing my benefits.

3 (A.R. 35-36.) Plaintiff testified that he was notified in or around
4 November 1999, that: he was still disabled, he had been underpaid
5 benefits, and his benefits were being increased. (A.R. 36.) He
6 testified that the next correspondence he received from the Commissioner
7 was that he had not cashed a check. (*Id.*) He testified that he
8 thereafter received correspondence from the Commissioner informing him
9 that he had been overpaid. (A.R. 37.)

11    In addition, Plaintiff's counsel questioned Plaintiff as to whether
12 he received any other correspondence from the Commissioner suggesting
13 that he needed to report his earnings following the nine-month trial
14 work period:

16    Q:  Is there anything between the time that you completed the
17        form in August '97 through the notice that you received
18        sometime in November of 1999 indicating that you – it appeared
19        that you had not cashed one of their checks. Is there
20        anything that Social Security sent to you that would make you
21        believe that you had an obligation to tell them that you were
22        still working?
23    A:  No, not at all.
24    Q:  Okay. And is there anything that you would be aware of
25        that would cause you to believe that they didn't know that you
26        were still working?
27    A:  No, because I submitted for everything.
28    Q:  Is there anything that occurred that would cause you to

1 | believe that you had a continuing duty to inform them of any
2 | information?
3 | A:  No.
4 | Q:  And why is that?
5 | A:  Because they said I was still disabled, and I was still
6 | disabled, and I am.  And they said that they would notify me
7 | and they'd follow through and continually assess and review my
8 | situation.
9 | Q:  In fact, in almost every document that they sent to you
10 | between the time you filled out the form and November 17 of
11 | 1999, they indicated to you that you had a continuing
12 | disability, [right]?
13 | A:  Correct.

(A.R. 37-38.)

In view of the evidence of record, the ALJ's decision that Plaintiff was "at fault" for having accepted the overpayment is not based on substantial evidence.  The only notice clearly informing Plaintiff of his obligation to report his earnings that exceeded $500 per month (the substantial gainful activity amount) following the nine-month work period is the undated notice, which Plaintiff contends he did ***not*** receive.  Based on a review of Plaintiff's testimony regarding the documents he did receive, it is unclear what evidence supported the ALJ's decision that Plaintiff "was informed that if his earnings from self employment went over the substantial gainful activity (SGA) amount for any month after the trial work period was completed, he would not be

due benefits for that month."[3]  (A.R. 17.)  Accordingly, the ALJ's finding constitutes reversible error.

**B.  The ALJ Erred By Failing To Make An Explicit Finding Regarding Plaintiff's Credibility**.

The ALJ need not render a credibility determination in a case where a claimant's credibility is not a critical issue. Rand v. Sullivan, 924 F.2d 159, 161 (9th Cir. 1991)(ALJ was not required to render a credibility determination because the central issue was whether the allocation of income between the claimant and the claimant's husband for calculation of benefits was proper; resolution of that question did not involve or require a credibility determination).

However, where credibility is a critical factor in the ALJ's decision, "courts have consistently required that there be an explicit finding whether the Secretary believed or disbelieved the claimant." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). In Lewin, Plaintiff testified that she called the Social Security Administration to ask if the amount of her benefits was correct prior to receiving notice that she had been overpaid, although the ALJ found that Plaintiff was not "without fault" in accepting the overpayment. There, the Ninth Circuit found that the ALJ's failure to discuss and specifically discredit Plaintiff's testimony constituted error. *Id*. at 634. *See*

---

[3] The January 23, 1998 letter sent to Plaintiff informed him of his obligation to report "changes" in pay or work activities following his Work Activity Report. (A.R. 51.) However, this letter does not define substantial gainful activity and does not clearly outline the guidelines regarding Plaintiff's eligibility for benefits following the nine-month trial work period.

11

*also* Schwingel v. Harris, 631 F.2d 192, 197 (2d Cir. 1980)(remanding case where the question as to whether claimant was "without fault" in accepting an overpayment necessitated a credibility determination from the ALJ regarding the claimant's testimony that she did not understand that she was supposed to inform the agency if her savings went over a certain limit).

Here, as set forth above, the ALJ found that Plaintiff was not "without fault" in accepting the overpayment, because "[Plaintiff] was aware that he was not entitled to disability benefits if he was engaging in substantial gainful activity following completion of a trial work period." (A.R. 17.) As in Lewin, the ALJ failed to specifically discuss Plaintiff's testimony that he had no reason to believe he was being overpaid. Thus, the ALJ implicitly rejected the credibility of Plaintiff's testimony on this critical issue. Because Plaintiff's credibility is the lynchpin to the outcome of this case, it was improper for the ALJ to make an implicit finding. *See* Albalos v. Sullivan, 907 F.2d 871, 873 (9th Cir. 1990)(holding that where the claimant's credibility was critical to the "without fault" determination, "[a]n 'implicit' finding that [the claimant] was not credible does not satisfy [the standard in Lewin]."

Accordingly, the ALJ's failure to render a credibility finding constitutes reversible error.

///
///
///
///

**C.      Remand Is Required Because Further Development Of The Record Is Necessary To Determine The Issue Of Whether Plaintiff Was "Without Fault" In Accepting The Overpayment.**

"If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded." Lewin, 654 F.2d at 635 (remanding the case to the district court to enter judgment for the claimant, noting that the record had been thoroughly developed and, aside from the ALJ's failure to give proper weight to the claimant's testimony, all other evidence indicated that the claimant was "without fault" in accepting an overpayment of benefits); *cf*. Albalos, 907 F.2d at 873 (remanding case for further proceedings to rectify errors, including the ALJ's failure to make an express finding that the claimant's testimony that she was "without fault" in accepting an overpayment was not credible); Schwingel, 631 F.2d at 198 (remanding case where the ALJ did not make a credibility determination and the determination regarding whether the claimant was "without fault" in accepting an overpayment hinged on the credibility of her testimony that she did not understand that she was supported to inform the agency if her savings went over a certain amount).

As explained above, the critical issue in this case, which hinges upon a credibility determination, is whether Plaintiff knew or should have known that he had been overpaid disability benefits.  However, neither the ALJ nor Plaintiff's counsel questioned Plaintiff regarding whether he received the form notice (A.R. 56), which explicitly states that Plaintiff would not be entitled to benefits if he earned over $500 per month following the end of his trial work period.  Without such

testimony, a valid credibility finding cannot be rendered. Accordingly, on remand of this case, the ALJ should elicit further testimony from Plaintiff and render an explicit credibility finding. Further, if upon rehearing, Plaintiff is found to be "without fault," the ALJ then must determine whether recovery of overpaid benefits would defeat the purpose of Title II or be against equity and good conscience, pursuant to 20 C.F.R. § 404.506.

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 30, 2005

/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE